IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARTOR KIKI BROWN, | No. 3:19-CV-00057 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LT. GILDEA, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### OCTOBER 25, 2021

Plaintiff Gartor Kiki Brown, who was previously incarcerated at the State Correctional Institution in Camp Hill, Pennsylvania (SCI Camp Hill) during times relevant to this lawsuit, commenced this Section 1983[1] action in January 2019. Brown asserts claims under state law and pursuant to the First, Eighth, and Fourteenth Amendments to the United States Constitution. These claims involve alleged sexual assaults that occurred while Brown was housed at SCI Camp Hill, and Brown named as defendants multiple correctional staff of varying ranks.

Presently pending is Defendants' motion for partial summary judgment.[2] For the reasons set forth below, the Court will grant Defendants' motion.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] Doc. 86.

I.     **FACTUAL BACKGROUND**[3]

Brown was incarcerated at SCI Camp Hill from August 9, 2017 to October 23, 2017.[4] His cellmate during the time at issue was Damian Strona.[5] Brown, who is a self-described "120[-]pound homosexual male," avers that Strona sexually assaulted him on October 1 and 4 of 2017.[6] Brown further asserts that Lieutenant Robert Gildea (Defendant Gildea) was fully aware of Strona's history of multiple serious assaults and rape, intentionally placed Brown in the same cell as Strona, encouraged Strona to sexually assault Brown, and actually witnessed the October 1 assault but took no action to intervene.[7] According to Brown, he suffered a second attack—both physical and sexual—by Strona on October 4, which was also preventable.[8] Brown recounts that, on the following day, October 5, 2017, Strona was moved to another cell.[9]

---

[3]   Local Rule 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Local Rule of Court 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the following factual background derives from the parties' Rule 56.1 statements of material facts. *See* Docs. 87, 92. To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the Court cites directly to the Rule 56.1 statements.
[4]   Doc. 87 ¶ 4.
[5]   *Id.* ¶ 10.
[6]   Doc. 95 ¶¶ 11-12, 17.
[7]   *Id.* ¶¶ 11-12.
[8]   *Id.* ¶ 17.
[9]   *Id.* ¶ 18.

2

Per Pennsylvania Department of Corrections (DOC) policy, SCI Camp Hill commenced an investigation into Brown's allegations of rape.[10] Brown was interviewed, and the DOC report indicates that Brown claimed that Strona had sexually assaulted him and that Brown had reported the assault to a "Corrections Officer (CO) 2 Ryan Zimmerman, an unknown Lieutenant, a couple of nurses and some [Corrections Officers]."[11] Strona was also interviewed and denied sexually assaulting Brown.[12] CO 2 Ryan Zimmerman was interviewed and denied that Brown had reported any sexual assault to him.[13] The DOC investigator ultimately found that Brown's claims were "unsubstantiated" and closed the investigation.[14]

The Pennsylvania State Police (PSP) independently investigated the matter as well.[15] Brown and Strona were interviewed again, and Strona once more denied

---

[10] Doc. 87 ¶ 8 (citing DC-ADM 008).
[11] Doc. 87-1 at 6, 11; Doc. 87 ¶ 9.
[12] Doc. 87 ¶ 10.
[13] *Id.* ¶ 11. The DOC report indicates that, on October 1, 2017, CO 2 Ryan Zimmerman was not assigned to the housing block (E Block) where Brown was incarcerated but was instead assigned to A Block. Doc. 87-1 at 8, 21. The DOC investigator also interviewed "CO3 [Melvin] Bartow," who was assigned to E Block that day, but Lieutenant Bartow likewise denied that Brown had reported a sexual assault to him. *Id.* at 8. However, the "Security Level 5 Housing Unit Log" cited by the DOC investigator in his report only reflects the hours of 2:00 p.m. to 10:00 p.m. on October 1. *See id.* at 25. Brown produced the first-shift October 1 log, which indicates that both Defendants Gildea and a "Sgt Zimmerman" were assigned to Brown's housing block from 6:00 a.m. to 2:00 p.m. that day. *See* Doc. 94 at 13. It appears that there may be two DOC correctional officers with the last name "Zimmerman"—CO 2 Ryan Zimmerman and a "Sgt. Derrick Zimmerman," who is a named defendant. *See, e.g.,* Doc. 12.
[14] Doc. 87 ¶ 17.
[15] *Id.* ¶ 12.

3

sexually assaulting Brown.[16] During his interview with the PSP trooper, Brown recalled that Strona had raped him and that an SCI Camp Hill Lieutenant observed the sexual assault and was "laughing at him" while it occurred.[17] The PSP trooper recommended that the investigation be terminated "due to lack of evidence supporting" Brown's allegations.[18]

Brown was transferred to the State Correctional Institution in Huntingdon, Pennsylvania (SCI Huntingdon) on October 23, 2017.[19] Brown reported the sexual assault during his intake with a DOC counselor but refused to provide extensive details.[20] Brown's report of the incident during his intake at SCI Huntingdon spurred the above investigations by the DOC and PSP.[21]

Brown filed suit in January 2019 against Defendant Gildea, Corrections Officer Robert Harig (Defendant Harig), Corrections Officer Derwin Hill, Jr. (Defendant Hill), "Sgt." Derrick Zimmerman (Defendant Zimmerman), and Lieutenant Robert Snyder (Defendant Snyder).[22] Brown asserts claims against Defendants under the Eighth Amendment for failure to protect and deliberate

---

[16] *Id.* ¶¶ 13, 15.
[17] Doc. 87-1 at 15.
[18] *Id.* at 16.
[19] Doc. 87 ¶ 5.
[20] *Id.* ¶¶ 6-7.
[21] *See id.* ¶¶ 8, 12.
[22] Doc. 1 at 2. Brown also named a "John Doe" correctional defendant who was later dismissed. *See* Doc. 39 at 3.

indifference to serious medical needs, as well as a Fourteenth Amendment claim for substantive due process violations.[23]  Brown alleges a separate claim against Defendant Gildea under the First Amendment for retaliation.[24]  Brown also lodges a state-law claim of negligence against Defendants.[25]  Defendants move for partial summary judgment, arguing that Brown's claims under the Fourteenth Amendment and pursuant to state law cannot survive Rule 56 scrutiny.[26]

## II.  STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[27]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[29]

---

[23]  Doc. 1 at 4.
[24]  *Id.*
[25]  *Id.*  Defendants state that Brown's complaint also includes a claim for "intentional infliction of emotion distress" (IIED).  *See* Doc. 88 at 5-6, 7.  However, even under an extremely liberal reading, Brown's single statement that Defendants' negligence "caused him emotional distress," (Doc. 1 at 4), cannot be construed as stating a claim for IIED.  At most, this statement describes the alleged damages Brown sustained from Defendants' purported negligence.  Indeed, Brown's complaint does not even recite the bare elements of an IIED claim.
[26]  *See generally* Docs. 86, 88.
[27]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[28]  FED. R. CIV. P. 56(a).
[29]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[30] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[31] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[32] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[33] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[34]

## III. DISCUSSION

Defendants move for partial summary judgment. They assert that Brown's Fourteenth Amendment substantive due process claim must fail under the "more-specific-provision rule," and that Defendants are immune from Brown's state-law negligence claim. The Court will address each argument in turn.

---

[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[31] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[32] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[33] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[34] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

### A.    Substantive Due Process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution contains both procedural and substantive protections.[35] The substantive component of the Due Process Clause safeguards against certain deprivations of individuals' "life, liberty, and property" by state actors "regardless of the fairness of the procedures used to implement them."[36]

A substantive due process claim, however, cannot be maintained when the alleged constitutional violation is "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment."[37] In such situations, the claim must be analyzed under the rubric of the more specific constitutional provision rather than substantive due process,[38] an "unchartered area" with "scarce and open-ended" guideposts.[39] The "more-specific-provision rule" will often apply when the challenged conduct underlying the substantive due process claim is the same conduct that implicates a more explicit constitutional provision.[40]

Brown's substantive due process claim cannot circumvent the more-specific-provision rule. The allegations underlying his Eighth Amendment failure-to-

---

[35]  *See generally* U.S. Const. amend. XIV, § 1.
[36]  *L.R. v. Sch. Dist. Of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).
[37]  *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).
[38]  *Id.*
[39]  *Collins*, 503 U.S. at 125.
[40]  *See Porter*, 974 F.3d at 448.

protect claim are identical to his substantive due process averments.  In fact, Brown's complaint simply alleges that Defendants' conduct that constituted "cruel and unusual punishment" under the Eighth Amendment likewise "violated his substant[ive] Due Process rights under the Fourteenth Amendment."[41]  In addition, Brown does not provide any argument or evidence regarding his Fourteenth Amendment claim in opposition to Defendants' Rule 56 motion.[42]  Because Brown's substantive due process allegations are already covered under the Eighth Amendment, the Court will grant summary judgment in Defendants' favor on Brown's Fourteenth Amendment claim.

### B. Pennsylvania Negligence

Defendants next contend that they are immune from Brown's state-law negligence claim.  Brown again fails to counter Defendants' argument in any way.[43]  Nor could he.  Pennsylvania has waived sovereign immunity in very limited circumstances for its agencies' employees acting within the scope of their duties—a classification which undoubtedly includes the DOC defendants here.[44]  None of those narrow, enumerated exceptions to immunity apply under the facts of this case.  Thus, Brown cannot maintain an action in negligence seeking monetary

---

[41] Doc. 1 at 4.
[42] *See generally* Doc. 93.
[43] *See generally id.*
[44] *See* 1 PA. CONS. STAT. § 2310; 42 PA. CONS. STAT. §§ 8521-22.

Case 3:19-cv-00057-MWB-MP   Document 98   Filed 10/25/21   Page 9 of 9

damages from Defendants because state sovereign immunity clearly bars such lawsuits against Commonwealth agency employees.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for partial summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

9